## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | 25-CR-342 (RC) |
| v. : | |
| **ERIC MALIK SMITH** : | |

### MOTION TO SUPPRESS PHYSICAL EVIDENCE

Mr. Eric Smith, through undersigned counsel, respectfully moves this Honorable Court to suppress the use of at trial the physical evidence found on August 8, 2025, as it was taken in violation of the Fourth Amendment to the United States Constitution.

Specifically, Mr. Smith was unlawfully arrested on August 8, 2025, without a warrant and with insufficient probable cause to believe that he committed a crime. As a result, the firearm found as a result as well as the DNA taken from Mr. Smith as a result, should be suppressed.

## Background/Procedural Posture

On August 8, 2025, a call was made to the Metropolitan Police Department (MPD) in regards to a "suspicious person" who was allegedly seen on CCTV video surveillance outside the Office of Neighborhood Safety Building in the parking lot. According to officers who arrived on the scene, two individuals employed in the building reported that a security office watching CCTV footage in real time saw Mr. Smith "acting suspicious" by a vehicle by ducking down by the wheel well of the vehicle and looking around. *See* Exhibit 1, Gerstein Affidavit. Employees then reported that they saw a firearm in the rear passenger side wheel well. *Id*. MPD arrived on the scene and recovered a firearm in that location. *Id*. Without a warrant and without viewing the CCTV footage, MPD arrested Mr. Smith for Carrying a Pistol Without a License. MPD did this with knowledge that the vehicle did not belong to Mr. Smith, and based solely upon the employees' observation of the CCTV footage and "assumptions" that Mr. Smith had stashed a firearm in the well of a random car. *See* Exhibit 2, Ofc. Rivera BWC. at min. 10:28-11:35.

The next day, based upon no new information, MPD requested a buccal swab warrant to obtain DNA from Mr. Smith. Based upon virtually identical information provided in the Gerstein, the warrant was granted on August 9, 2025, and a buccal swab was taken from Mr. Smith.

Mr. Smith was initially charged in Superior Court in Case No. 2025 CF2 009199. However, a few days later, after a preliminary hearing on August 13, 2025, this matter was dismissed by The Honorable Eric Sebastian Glover for insufficient

probable cause. The magistrate court's decision was made even after reviewing the CCTV footage presented at the preliminary hearing.

On November 5, 2025, the government obtained a federal indictment charging Mr. Smith with the same allegation that was previously dismissed by a Superior Court magistrate judge.

For the reasons outlined in this motion, Mr. Smith is requesting that the Court suppress all evidence found as a result of the constitutional violations that occurred on August 8, 2025, and August 9, 2025, including the firearm, and the buccal swab DNA sample taken from Mr. Smith.

## Legal Authority

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.

Generally, searches "conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment – subject only to a few specifically established and well delineated exceptions." (quoting *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993)) *United States v. Vinton*, 594 F.3d 14, 19 (D.C. Cir. 2010). Probable cause is an essential prerequisite to an arrest. *See Dunaway v. New York*, 442 U.S. 200, 213 (1979).

The exclusionary rule thus requires suppression of evidence obtained in violation of this guarantee. *See United States v. Weaver*, 808 F.3d 26, 33 (D.C. Cir. 2015) (citing *Mapp v. Ohio*, 367 U.S. 643, 655 (1961) and *Weeks v. United States*, 232

U.S. 383, 398 (1914)).

The government is obligated to justify every aspect of any stop, arrest, or search. A failure to do so is a concession that the officers in question acted in violation of the Fourth Amendment. A defendant, in turn, has no obligation to theorize about or otherwise anticipate the government's justifications for its warrantless actions. *See United States v. Jackson*, 415 F.3d 88, 92 (D.C. Cir. 2005) (citing *United States v. Jeffers*, 342 U.S. 48, 51 (1951)); *see also United States v. Castle*, 825 F.3d 625, 634 (D.C. Cir. 2016).

## ARGUMENT

### I. There was Insufficient Probable Case to Arrest Mr. Smith

Law enforcement made the decision to arrest Mr. Smith based on an uncorroborated hunch. To determine whether an officer had probable cause to make an arrest, a court must examine the events leading up to the arrest, and then decide "whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *Maryland v. Pringle*, 540 U.S. 366 (2003) (citing *Ornelas v. U.S.* 517 690, 696 (1996)). In refusing to create a precise definition for probable cause, the Supreme Court reiterated that "the substance of all the definitions of probable cause is a reasonable ground for belief in guilt." *Id.* at 371.

On August 8, 2025, MPD arrested Mr. Smith based on assumptions that were not verified and there was no reasonable belief that Mr. Smith had committed the

crime of unlawful possession of a firearm. MPD relied upon a third parties' observation of CCTV footage that, even if described accurately, did not establish probable cause. According to the employees' observations, they observed someone walk to a vehicle in the parking lot and bend down next to a car that did not belong to them. Nobody saw this individual with a gun. Nobody saw this person jostle his waistband or place his hands under the car. Employees then gave police a vague description of this individual and noted that they believed he was in a counseling session in the building. Employees provided a photograph to MPD of Mr. Smith. *See* Exhibit 2, Ofc. Rivera BWC at 15:00-25. However, MPD did not watch the video footage themselves or inquire as to other time periods in the CCTV footage that could have shown others walking next to the car in question as well, including the owner of that vehicle. MPD then ran the information for the vehicle and found that it did not belong to Mr. Smith. Officers opined that since Mr. Smith did not drive and did not have a car (information also provided by employees) that he "possibly" stashed the gun there. *See* Exhibit 3, Ofc. Porter BWC at min 9:05-30.

Based upon this information alone, MPD decided that their assumptions and speculations about what possibly happened was sufficient to make an arrest. Their actions fall short of the constitutional guarantees under the Fourth Amendment that protects "citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime." *Brinegar v. United States*, 338 U.S. 160, 176 (1949).

Notably, the Honorable Eric Sebastian Glover found insufficient probable

cause even after viewing the limited CCTV footage provided at a preliminary hearing. In finding insufficient probable cause, he reasoned "there is simply no evidence…that the defendant was in possession of a firearm ... .there is simply an individual who walks behind a car and bends over and then stands up." *See* Exhibit 4, Preliminary Hearing Transcript at 60-61. The magistrate goes on to explain that "there is no testimony….as to how long that vehicle had been there, who, if anyone, had access to the vehicle or the parking lot." *Id*. In finding no probable cause, the magistrate said "the Court would simply [be] speculating as to what transpired to find probable cause." *Id*. at 61.

MPD based their decision to arrest Mr. Smith on less evidence than the magistrate court even had when it dismissed this matter for lack of probable cause. MPD arrested Mr. Smith based not only upon speculation but upon uncorroborated witness information. For these reasons, the Court should also find that officers lacked sufficient probable cause to arrest Mr. Smith and suppress the physical evidence found as a result. *See Wong Sun v. U.S*. 371 U.S. 471, 484 (1963).

## II. The DNA sample taken the next day was a direct result of the unlawful arrest

As a direct result of Mr. Smith's unlawful arrest, MPD obtained a buccal swab warrant to obtain Mr. Smith's DNA on August 9, 2025. The affidavit in support of probable cause mirrored the claimed probable cause for arrest. *See* Exhibit 5, Search Warrant Application. Notably, in the application, MPD noted that Mr. Smith had been arrested and charged. *Id*. This arrest, however, lacked probable cause and all of the fruits of that unlawful seizure should be suppressed, including

the DNA taken from Mr. Smith which would not have been taken otherwise.

The DNA in this case was taken based upon "the exploitation of illegality," and therefore may not be used against Mr. Smith. *Wong Sun*, 371 U.S. at 488. In addition, the seizure of the DNA "followed directly in an unbroken causal chain of events," from the constitutional violation. *United States v. Gorman*, 859 F.3d 706, 714 (9th Cir. 2017). Lastly, since a buccal swab warrant is only proper when there is a lawful arrest based upon probable cause, the Court should suppress the DNA in this case. *See Maryland v. King*, 569 U.S. 435 (2013).

## Conclusion

For these reasons and any such other reasons as may be presented at a motions hearing, Mr. Smith respectfully requests this Court suppress the use of all physical evidence at trial.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/
Maria N. Jacob
Assistant Federal Public Defender
625 Indiana Ave., N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500