**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Criminal No. 25-cr-342 (RC)** |
| | : | |
| **v.** | : | |
| | : | |
| | : | |
| **ERIC MALIK SMITH,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

**UNITED STATES' MEMORANDUM IN OPPOSITION TO**
**DEFENDANT'S MOTION TO SUPPRESS PHYSICAL EVIDENCE**

The United States of America, by and through its undersigned counsel, respectfully submits this Memorandum in Opposition to Defendant's Motion to Suppress Tangible Evidence. For the reasons incorporated herein, the Court should deny the defendant's motion.

**PRELIMINARY STATEMENT**

The essential facts of this case are not in dispute. On August 8, 2025, security officials at the D.C. Office of Neighborhood Safety and Engagement observed the defendant bend behind the right rear tire of a vehicle in the parking lot for roughly 13 seconds. As the defendant left the vehicle to enter the office for his counseling appointment, the security officials went to the vehicle and observed a firearm sitting on top of the right rear tire. The security officials called the police, who arrested the defendant for illegal possession of a firearm and related offenses.

On August 9, 2025, the defendant was presented in D.C. Superior Court for illegally possessing the firearm. The judge reviewed the *Gerstein* affidavit and found that the charges were supported by probable cause. That same day, law enforcement applied for a search warrant, based on the same facts in the *Gerstein* affidavit to swab the defendant's buccal tissue for DNA testing; a judge then found the warrant to be supported by probable cause, and issued the search warrant.

On August 13, 2025, at the defendant's preliminary hearing, a magistrate judge determined that there was no probable cause to support the defendant's arrest and dismissed the case.

The government submitted the defendant's buccal swab and the swabs of the firearm and magazine for DNA testing. After receiving the results of the DNA testing, which established that the defendant's DNA profile was included on the firearm, the government returned an indictment in the instant case.

The issue of whether there is probable cause that a search will *establish evidence* of a crime is separate and apart from whether there is probable cause that someone *committed* a crime. In other words, whether there was probable cause to arrest the defendant on August 8, 2025, is irrelevant to the question of whether the physical evidence in this case should be suppressed. The defense invites the Court to contravene established Fourth Amendment jurisprudence, and establish a new area of law, where abandoned property and the results of a lawfully obtained warrant can be suppressed when a judge later finds that the defendant's arrest was not supported by probable cause. The Court should decline this invitation and deny the motion to suppress.

## FACTUAL BACKGROUND

On August 8, 2025, at approximately 10:00 AM, Officers of the Metropolitan Police Department (MPD) Sixth District responded to a call for service at the D.C. Office of Neighborhood Safety and Engagement, located at 100 42nd Street NE, Washington, D.C. 20019. CP-1 and CP-2, security officials who were watching CCTV footage of the property, observed the defendant, Eric Smith, acting in a suspicious manner in the rear parking lot of the office.

As the defendant drew their attention, the security officials zoomed the camera in on the defendant and swiveled the camera to follow his path. The officials observed the defendant walk over to a vehicle parked against a fence, and bend down behind the wheel of the vehicle for

approximately 13 seconds. *See* Figure 1A & 1B. CP-1 and CP-2 investigated the area roughly two minutes after the defendant left the vehicle to enter the office to meet with his counselor. CP-1 and CP-2 discovered a Glock 17 Gen 4 9mm Pistol, loaded with one round in the chamber and 16 rounds in the 17-round capacity magazine, sitting on top of the tire that the defendant was bending toward on the surveillance footage. *See* Figure 2 & Figure 3. The firearm was modified with a machine gun conversion device ("MCD") that converted it to an automatic weapon. The serial number was obliterated. After recovering the firearm, officers arrested the defendant inside the office.



*Figure 1A (left) and Figure 1B (right): still shots from CCTV showing the defendant behind the car and bending down next to the rear passenger side wheel well.*

3



*Figure 2: Photo captured by MPD of the firearm located on the rear passenger side wheel well.*



*Figure 3: Photo taken by MPD of the recovered firearm. The obliterated serial numbers can be observed on the slide of the firearm (circled in red) and the machine gun conversion device is on the end of the slide closest to the camera (circled in yellow).*

4

On August 9, 2025, the government charged the defendant with carrying a pistol without a license in D.C. Superior Court.[1] Associate Judge Danya Dayson reviewed the *Gerstein* affidavit, *see* Gov't Ex. 1, and found probable cause that the defendant committed the charged offense. Judge Dayson ordered the defendant detained pending his preliminary hearing. That same day, law enforcement applied for a warrant to obtain a buccal swab from the defendant.[2] *See* Gov't Ex. 2. Associate Judge Katherine Oler found that there was probable cause that a swab of the defendant's buccal tissue would establish evidence that the defendant illegally possessed a firearm on August 8, 2025. *Id.* The government executed the warrant that day. *See* Gov't Ex. 3. Four days later, on August 13, 2025, at the defendant's preliminary hearing, Magistrate Judge Eric Glover determined that there was no probable cause to support the defendant's arrest and dismissed the case. The government later submitted the defendant's buccal swab and swabs of the firearm and magazine for DNA testing.

On October 27, 2025, the defendant was arrested for a separate firearm and drug offense, now charged in 25-cr-359 (RC). On October 29, 2025, less than 30 minutes before the defendant's detention hearing in U.S. District Court in that case, the government obtained the DNA results from the August 8, 2025, incident. These results established that the interpretable DNA mixture of the firearm originated from four individuals, that the defendant was included as a contributor, and that it was 150 *billion* times more likely if the mixed DNA profile originated from the defendant and three unknown individuals than if it originated from four unknown individuals. On November 5, 2025, the government returned an indictment against the defendant in the instant case.

On February 6, 2026, the defendant filed a motion to suppress the physical evidence in this

---

[1] District of Columbia Superior Court case number 2025 CF2 009199.
[2] District of Columbia Superior Court warrant number 2025 CSWSLD 003451.

case. The Court ordered the government to respond by February 20, 2026.

## ARGUMENT

The Court should deny the motion to suppress, as the buccal warrant was lawfully obtained and supported by probably cause. Even if the Court should find a deficiency related to the warrant, the good faith doctrine applies. There are no grounds to suppress the firearm, as the defendant abandoned it. Finally, the government contends that an evidentiary hearing is not warranted because there is no material challenge to the facts before the court.

### I. LAW ENFORCEMENT LAWFULLY OBTAINED THE BUCCAL WARRANT.

A party moving to suppress evidence must show that the evidence was seized due to a violation of their constitutional rights. *Wong-Sun v. United States*, 371 U.S. 471 (1963). The Fourth Amendment provides that "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. CONST. AMEND. IV. "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). Although the concept is fluid, the Supreme Court has described probable cause as "existing where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." *Ornelas v. United States*, 517 U.S. 690, 696 (1996); *see also United States v. Laws*, 808 F.2d 92, 94 (D.C. Cir.1986) (internal quotation marks omitted)). In *District of Columbia v. Wesby*, the Supreme Court recently further reaffirmed that:

> Because probable cause deals with probabilities and depends on the totality of the circumstances, it is a fluid concept that is not readily, or even usefully, reduced to a neat set of legal rules. It requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.

6

138 S.Ct. 577, 586 (2018) (citations and punctuation omitted). As articulated by the Court, "
[p]robable cause is not a high bar." *Id.*

Under the totality-of-the-circumstances approach established by the Supreme Court, a
judicial officer presented with a search warrant application must determine whether "there is a
fair probability that contraband or evidence of a crime will be found in a particular place" based
on "all the circumstances set forth in the affidavit before [the judge], including the veracity and
basis of knowledge of persons supplying hearsay information." *Gates*, 462 U.S. at 238. "A
magistrate's determination of probable cause should be paid great deference by reviewing
courts." *Id.* at 236 (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969). A reviewing
court examines only "whether there is substantial evidence in the record supporting the
magistrate's decision to issue the warrant." *Massachusetts v. Upton*, 466 U.S. 727, 728 (1984).

Challenges to the sufficiency of the evidence underlying the issuance of a search warrant
are disfavored. *See, e.g., United States. v. Ventresca*, 380 U.S. 102, 109 (1965) ("Although in a
particular case it may not be easy to determine when an affidavit demonstrates the existence of
probable cause, the resolution of doubtful or marginal cases in this area should be largely
determined by the preference to be accorded to warrants."). Moreover, "[i]n reviewing a warrant
application, 'the task of the issuing magistrate is simply to make a practical, commonsense
determination' of whether probable cause exists. In turn, 'the duty of the reviewing court is simply
to ensure that the magistrate had a substantial basis for . . . concluding that probable cause
existed.'" *United States v. Nozette*, 692 F. Supp. 2d 110, 111 (D.D.C. 2010) (quoting *Gates*, 462
U.S. at 238–39 (1983)).

Evidence of a crime under *Gates* encompasses all relevant evidence. *Michigan v. Clifford*,
464 U.S. 287, 294 (1984) ("[A] criminal search warrant may be obtained only on a showing of

probable cause to believe that relevant evidence will be found in the place to be searched.").[3]

"Relevant evidence" is that which "tends to make a fact of consequence more probable or less probable." Fed. R. Evid. 401. DNA evidence from a person can thus be relevant evidence, especially in a case where physical evidence is seized. *See generally District Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 62-63 (2006) (noting the importance of DNA evidence); *United States v. Morrow*, 374 F. Supp. 2d 51, 68 (D.D.C. 2005) ("even DNA evidence with relatively low statistical significance may be admitted as probative evidence"). As the Supreme Court has recognized, a "buccal swab" is a "common procedure" that involves "wiping a small piece of filter paper or a cotton swab similar to a Q-tip against the inside cheek of an individual's mouth to collect some skin cells." *Maryland v. King*, 569 U.S. 435, 444 (2013). This procedure is "quick and painless," and poses "no threat to the health or safety" of a defendant. *Id.* The acquisition of a buccal swab enables the prosecuting authority to compare the buccal swab to swabs of physical evidence obtained from a crime. In this context, the magistrate judge is required to assess whether the sworn affidavit provides probable cause that the item sought—the defendant's buccal swab—will yield possible evidence in the crime itself. In other words, is there a "fair probability[,]" *Gates*, 462 U.S. at 238, that the DNA in a defendant's saliva sample could be additional evidence of the crime?

---

[3] *See also, e.g.*, *In re Morgenthau*, 457 A.2d 472, 475 (N.J. Ct. App. 1983) ("The probable cause necessary for the issuance of a search warrant relates to the existence of material and relevant evidence [of the crime]."). *Cf. Bhd. Locomotive Eng'r v. Rossi*, 290 Fed. App'x 518, 518–19 (3rd Cir. 2008) (probable cause to search witness for blood and urine "to rule out any possibility" that his intoxication contributed to the crime, even where no evidence of witness's "wrongdoing"); *Commonwealth v. Draheim*, 849 N.E. 2d 823, 828 (Mass. 2006) (probable cause to search offspring of a rape for DNA which "will probably provide evidence relevant to the question of the defendant's guilt").

The defendant's motion seeks to void the search warrant approved by the magistrate based on a flawed premise: that because a magistrate found that no probable cause existed to arrest the defendant, that a warrant obtained and executed days before to obtain evidence of a crime should be invalidated. This contention is not supported by the law. The defense improperly cites *Maryland v. King* to support its proposition, writing "since a buccal warrant is only proper when there is lawful arrest based upon probable cause, the Court should suppress the DNA in this case." Def. Mot. to Suppress (ECF no. 10 at 7). However, the Supreme Court held in *Maryland v. King* that, as part of standard booking procedures, police could legally swab a swab a suspect's buccal tissue *without* a warrant when arrested for a serious offense supported by probable cause. *See* 569 U.S. at 465-66. The police in this case did not do that; here, they sought and obtained a warrant, signed by a neutral magistrate.

The warrant in this case alleges sufficient facts to show by probable cause that there "is a fair probability that contraband or evidence of a crime will be found in a particular place," *Gates,* 462 U.S., at 238, given that the firearm in question was found on top of a tire shortly after security officials observed the defendant crouching next to the wheel well. The defendant was the last person seen in the immediate proximity of the firearm, and whether his DNA was present on that firearm is undeniably relevant evidence, if not the most probative type of evidence, as to whether he was in physical possession of the firearm. Indeed, had the defendant been excluded from the DNA profile found on the gun, the defendant would claim that the evidence was material evidence of his innocence. The fact that the police relied, in part, on the security officials' observations in no way undermines the validity of the warrant as they were witnesses to the crime and their accounts were supported by the surveillance footage. *See Jaben v. United States*, 381 U.S. 214 (1965) ("Furthermore, unlike narcotics informants, for example, whose credibility may often be

suspect, the sources in this tax evasion case are much less likely to produce false or untrustworthy information. Thus, whereas some supporting information concerning the credibility of informants in narcotics cases or other common garden varieties of crime may be required, such information is not so necessary in the context of the case before us."*; see also* 2 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 3.4(a) (6th ed. Nov. 2024 update) (explaining that a showing of credibility "is not needed to establish veracity when the information comes from an average citizen who is in a position to supply information by virtue of having been a crime victim or witness").

Regardless of whether the defendant was arrested on scene on August 8, 2025, the police had probable cause to obtain a warrant to swab the defendant's buccal tissue because the presence of his DNA on the firearm, or the lack thereof, is relevant to whether the defendant possessed the firearm. The mere fact that the police were more easily able to swab the defendant's buccal tissue because he was in custody due to his arrest has no bearing on whether there was probable cause to swab the defendant's mouth in the first place. Because there was probable cause to believe the buccal swab would establish evidence of whether the defendant illegally possessed the recovered firearm, the results of the warrant should not be suppressed.

## II.    THE POLICE HAD GOOD FAITH TO RELY ON THE WARRANT.

Even if the Court were to find that the warrant for the defendant's buccal swab lacked probable cause, suppression would nevertheless not be warranted be law enforcement acted in good faith when they relied upon the warrant. Evidence that is seized in good faith reliance on a valid warrant will not be excluded or suppressed, even if the warrant is subsequently found to be invalid, unless the officers' reliance on the warrant was objectively unreasonable. *See United States v. Griffith*, 867 F.3d 1265, 1279 (D.C. Cir. 2017). The Supreme Court has explained that such reliance is unreasonable when the issuing judge "was misled by information in an affidavit

10

that the affiant knew was false or would have known was false except for his reckless disregard of the truth." *United States v. Leon*, 468 U.S. 897, 923 (1984); *Griffith*, 867 F.3d at 1278; *United States v. Wells*, 341 A.3d 1096, 1100 (D.C. 2025)

Here, the police had good faith in relying on the signed warrant because the affidavit was supported by probable cause, was not misleading, nor did it contain any false information. *See Leon*, 468 U.S. at 923; *Griffith*, 867 F.3d at 1278. The defense suggests that the inclusion of the fact that the defendant was arrested and charged in this case undermines the validity of the warrant because four days later a different judge found that there was no probable cause to support the defendant's arrest. (ECF no. 10 at 6). These were not misleading statements – they were facts. It is axiomatic that a judge reviewing this buccal warrant would understand the underlying charges have yet to face a preliminary hearing. Nor should it matter, as the judge is not vetting the validity of the arrest, but is deciding whether there there "is a fair probability that contraband or *evidence of a crime* will be found in a particular place," *Gates,* 462 U.S. at 238 (emphasis added). Therefore, the police had good faith in relying on the warrant.

## III.   THE DEFENDANT HAD NO FOURTH AMENDMENT INTEREST IN THE FIREARM, AS IT WAS ABANDONED.

Finally, the defendant's argument that the firearm at issue in this case must be suppressed fails because the defendant had abandoned that illegal firearm well before he was arrested. In asserting a Fourth Amendment violation, a defendant must establish that they had a legitimate expectation of privacy in the place searched or a proprietary interest in the property seized. *United States v. Salvucci*, 448 U.S. 83, 93 (1980). "When individuals voluntarily abandon property, they forfeit any expectation of privacy in it that they might have had." *United States v. Thomas*, 864 F.2d 843, 845 (D.C. Cir. 1989) (quoting *United States v. Jones*, 707 F.2d 1169, 1172 (10th Cir.1983), *cert. denied*, 464 U.S. 859, (1983)). Thus, "a warrantless search or seizure of property

that has been abandoned does not violate the Fourth Amendment." *Thomas*, 864 F.2d at 845. The test to determine whether one has voluntarily abandoned property "is an objective one," focusing on the intent of the person who is alleged to have abandoned the object. *Id.* at 846 (internal citations and quotation marks omitted). This "intent may be inferred from words spoken, acts done, and other objective facts." *Id.* at 846 (internal citations and quotation marks omitted).

The facts are not in dispute. The firearm in this case was discovered sitting in plain view on a tire of a car in a parking lot, while the defendant was inside a building. The defendant did not own this car, nor did he leave any belongings that suggested that he was going to go back to the car. Further, this is not a location where people store personal belongings, as any member of the public could have walked by and seen it, and the car could have been driven away with the firearm still sitting on the tire. Under no circumstance can the defendant demonstrate a legitimate expectation of privacy in the outer tire of a parked vehicle or a proprietary interest in the firearm sitting on that tire. *See Salvucci*, 448 U.S. at 93. Accordingly, there are no grounds to justify the suppression of the firearm.

## IV. NO EVIDENTIARY HEARING IS WARRANTED.

The defendant's motion fails to proffer sufficient facts to warrant an evidentiary hearing. To the extent the Court determines a hearing is necessary, the evidence will establish that the firearm was abandoned and that the police obtained a warrant signed by a neutral magistrate to obtain a swab of the defendant's buccal tissue.

The D.C. Circuit has long held that "[a] defendant is entitled to an evidentiary hearing on his motion to suppress only upon factual allegations which, if established, would warrant relief." *United States v. Law*, 528 F.3d 888, 903-04 (D.C. Cir. 2008) (per curiam) (cleaned up). "If the defendant's assertions are insufficient to establish a constitutional violation, or the District Court need not resolve

any disputes of material fact to decide the suppression motion, denial of a hearing is warranted." *United States v. Neely*, 124 F.4th 937, 951 (D.C. Cir. 2024) (cleaned up).

As the First Circuit has explained, "[e]videntiary hearings on motions to suppress are required only when a defendant makes a sufficient showing that a warrantless search has occurred. To make this showing the defendant must allege facts, sufficiently definite, specific, detailed and nonconjectural, to enable the court to conclude that a substantial claim is presented. The defendant must allege facts that, if proven, would entitle him to relief." *United States v. Lewis*, 40 F.3d 1325, 1332 (1st Cir. 1994).

Here, the defendant's motion fails to meet that standard. Even under the defendant's own recitation of the facts, his motion does not meaningfully dispute the facts that gave rise to law enforcement's actions or raise a material factual issue requiring resolution through an evidentiary hearing. Accordingly, the Court should resolve the defendant's motion on the papers.

## CONCLUSION

For the foregoing reasons, the defendant's motion to suppress should be denied.

Respectfully submitted,

JEANINE FERRIS PIRRO
U.S. ATTORNEY

By:  /s/  David B. Liss
DAVID B. LISS
Assistant United States Attorney
D.C. Bar No. 90017629
601 D Street, N.W.
Washington, D.C. 20530
(202) 680-4025
David.liss2@usdoj.gov

13